Daniel W. WITT et al., Plaintiffs-Appellants,

and

St. Louis County, Missouri, et al., Intervenors-Plaintiffs,

v.

CITY OF WEBSTER GROVES et al., Defendants-Respondents.

No. 32124.

St. Louis Court of Appeals.

Missouri.

Nov. 16, 1965.

Motion for Rehearing or to Transfer to Supreme Court Denied Dec. 30, 1965.

Smith, Spalding & Crowe, Benjamin B. Tepper, Clayton, for plaintiffs-appellants.

Donald J. Stohr, County Counselor, Clayton, for intervenors-plaintiffs.

H. Jackson Daniel, Husch, Eppenberger, Donohue, Elson & Cornfeld, Wilbur B. Jones, Shulamith Simon, St. Louis, for defendants-respondents.

BRADY, Commissioner.

This appeal arises out of a class action filed by thirteen residents of an area annexed to the City of Webster Groves, Missouri, seeking a declaratory judgment invalidating the annexation. At the trial level St. Louis County intervened as a party plaintiff. At the conclusion of plaintiffs' evidence the trial court sustained the city's motion for judgment. The individual plaintiffs filed this appeal but were not joined therein by St. Louis County. The appeal was originally taken to the Supreme Court of this state, which held that the county's failure to join deprived that court of jurisdiction and the cause was transferred to this court. See Witt v. City of Webster Groves, Mo., 383 S.W.2d 723. We will refer to the City of Webster Groves as "the city"; to St. Louis County as "the county"; and to the plaintiffs by their designation in the trial court. Webster Heights will sometimes be referred to by that name and sometimes as the annexed area.

The plaintiffs advance two allegations of prejudicial error. These are that the trial court erred in sustaining defendants' motion for judgment offered at the close of

plaintiffs' case for the reason that the City of Webster Groves did not comply with § 71.015, RSMo 1959, V.A.M.S., a part of an act governing certain annexations and commonly known as "the Sawyers Act", and because the trial court erred in holding the proposed annexation to be reasonable. The facts bearing upon these allegations are as follows: In February of 1960 the City Council of Webster Groves, a constitutional charter city, adopted an ordinance providing for an amendment to the city's charter by extending the corporate limits to include the area here involved and known locally as "Webster Heights." Upon submission of this amendment to the qualified voters of the city it was approved and the city has been exercising jurisdiction of this area since April 5, 1960. Webster Heights consists of an area of approximately 69 acres. Prior to the annexation it was an unincorporated area entirely surrounded by incorporated communities; Brentwood lay to the north of it, Rock Hill to the west, and the city to the south and east. It contained a total of 226 structures, twelve of which were vacant. Of the remaining 214 nine were devoted to commercial use. A survey made just prior to the annexation showed that in the south end of this unincorporated area 20 per cent of the buildings were substandard while 60 per cent of the buildings were substandard in the northern end of it. In 1950 and again in 1956 the city rejected annexation requests by the residents of the annexed area on the ground that the extension of services to the area involved would cost the city a great deal more than it might recover from the area in benefits. In 1958 the city undertook a land clearance for redevelopment project under which the city would have to pay only one-third of the cost of the renewal project. A portion of the redevelopment area adjoined Webster Heights and Webster Groves was advised that there would be difficulty in obtaining financing for structures within the land clearance project and within the then city limits due to the conditions in Webster Heights with regard to open dumps, raw sewage disposal, and trash heaps. Another problem which the redevelopment authority encountered was that of trying to construct a satisfactory street along Bell Avenue. As it existed, Bell was basically nothing but a mud street with some traces of asphalt left on it. It forms part of the eastern boundary of Webster Heights and one-half of the street is in Webster Heights and the other half in the City of Webster Groves with the result that the city could only construct one lane of pavement along Bell Avenue. The city also had other street pattern problems where their streets connected with streets in Webster Heights. There was testimony that the city had caused an investigation and survey to be made which, among other things, indicated that more than one-third of the employed people living in the area worked in Webster Groves and that 80 per cent of the families living in the annexed area considered themselves a part of Webster Groves. The county performed only routine maintenance work on the streets in Webster Heights. It did no street rebuilding or construction work. The streets were "low grade" and "very lightly surfaced." Only some of them had markings.

Prior to the annexation this area was served by the Police Department of St. Louis County. There was extensive testimony as to the personnel training and equipment of that department which need not be more fully developed here. It is sufficient to state that the annexed area was not regularly patrolled and lay some four miles from the nearest unincorporated area policed by the county. However, the county police did serve other localities under contract which lay closer to the Webster Heights area than four miles. It was testified that it was difficult for the county police to serve the Webster Heights area. During the time the county police serviced this area they had a working agreement with the city's police department whereby the city would handle the emergency calls for them.

Webster Heights had an organized volunteer fire department. It had a building and one 1940 fire truck equipped with 1200 feet of hose of various diameters, water tanks and fire extinguishers. The testimony was that it was staffed by volunteers. There had been fatal fires caused by inadequate fire protection or by the inadequacy of fire hydrants.

When this area was unincorporated, it was also served by the St. Louis County Health Department. The services provided by that department are also provided to incorporated cities lying within the county on a contractual basis and at the date of this annexation the city had such a contract. The member of that department assigned to work in the city was assigned for a forty-hour period but there was no member of the county health department assigned to the annexed area. The testimony was that at the date of trial the city also had its own board of health commissioners and full time employees. From the standpoint of the county health department the annexed area was " * * * definitely a problem area * * *."

There was further testimony that there had been no attempt to enforce the County Minimum Housing Standard Ordinance in the Webster Heights area. When asked the reason for this failure, the testimony was as follows: "We have made some surveys based on the Minimum Housing Standard Ordinance and according to the findings that we made several years ago, we did not feel that the area was appropriate because of the sanitation deficiencies found for enforcement of the minimum code. * * * Well, the minimum standard code is designed to rehabilitate blighted housing that is structurally in condition or good enough I should say to be rehabilitated. If you find a very high percentage of housing that is blighted to the extent that the cost of rehabilitation would exceed fifty per cent of the value of the property, it has been the consensus of opinion among authorities in rehabilitation programs that it should not be enforced in the area and some

other means of improving the area might be utilized. For this reason, we did not enforce the code in the area." The fly problem which resulted from improper sanitation facilities and outdoor toilets existed both in the Webster Heights area and those areas of the city abutting the Webster Heights area.

There is no merit to the plaintiffs' contention that the trial court erred because the city did not follow certain procedures required by "the Sawyers Act" and in particular § 71.015, supra. The plaintiffs never requested a restraining order. This annexation was consummated on April 5, 1960. At that time the law clearly was that the Sawyers Act did not apply to constitutional charter cities. Emerson Electric Mfg. Co. v. City of Ferguson, Mo.App., 376 S.W.2d 643, l. c. 646, [2], and cases there cited. In 1963, the legislature amended the Sawyers Act by including, among other additions and changes, a new section now known as § 71.860, RSMo 1959, V.A.M.S. (See Laws of Mo., 1963, p. 126, Sec. A, (1).) That section specifically provides for the application of § 71.015, supra, to constitutional charter cities located in St. Louis County with an exception not pertinent here. We cannot understand the plaintiffs' attempt to establish the Sawyers Act as applicable to a 1960 annexation by a constitutional charter city. That matter has been settled adversely to plaintiffs' contention. Surely the passage of the 1963 amendment can have no effect upon a 1960 annexation.

The five other allegations of error set forth in plaintiffs' brief, given a fair reading, amount to a restatement in different forms of the same contention. It is that the trial court erred in holding that the reasonableness of the annexation was a fairly debatable question. In this same connection it is to be gathered from the plaintiffs' argument that they consider the burden of showing the city's action to be reasonable to be on the city. They are mistaken. It is true that in cases involving an-

nexations by cities to which the Sawyers Act applies, it has been repeatedly held that the effect of the act was to shift the burden as to showing the reasonableness of the annexation from those opposing it to the municipality. Sec. 71.015, supra, and cases cited note 3; City of Olivette v. Graeler, Mo., 369 S.W.2d 85. As stated earlier herein, at the time this annexation took place the Sawyers Act did not apply to constitutional charter cities. It was the provisions of the act that changed the burden and it follows that where the act does not apply the burden has not been changed. In the case of State ex inf. Taylor ex rel. Kansas City v. North Kansas City, 360 Mo. 374, 228 S.W.2d 762, 1. c. 774, it was specifically held that with regard to constitutional charter cities, "[t]he passage of the ordinance and its approval by the electorate makes a prima facie case of reasonableness and the burden of proving unreasonableness rests on those asserting it. * * * And the courts resolve any doubt as to reasonableness of such an ordinance in favor of its reasonableness. * * *" The issue to be resolved in the instant case is whether or not the plaintiffs bore their burden of establishing that the action of the city was unreasonable. In considering whether or not that issue is to be resolved in favor of the plaintiffs we note that in the North Kansas City case, at the citation above, it was said that if the question of the reasonableness of the proposed annexation is fairly debatable, then the decision as to reasonableness was for the city's officials and electorate and not for the court.

▪ The evidence was that the annexed area constituted an unincorporated island containing such a large percentage of substandard buildings that the county's minimum housing ordinance was totally ineffectual and no attempt was made to enforce it; that there was no regular employee of the county health department assigned to cover the annexed area in which trash heaps and open dumps abounded; that the annexed area was not patrolled at regular intervals; that its fire fighting force was not composed of full-time paid employees but was on a volunteer basis; that Webster Heights had "low grade" streets, some of which connected with the city's streets to carry the large percentage of the population of the annexed area to work in the city; and that the city abutted this annexed area on two sides and some of these conditions had already spread over into the abutting areas of the city. In addition there was proof that the city's efforts to eliminate slum and blighted areas within its boundaries would be thwarted had the annexed area been allowed to continue as before. We think these undisputed facts would weigh heavily with any reasonable city official and amply illustrate that the question of reasonableness was, at the very least, debatable.

The judgment should be affirmed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion by BRADY, C., is adopted as the opinion of this court. The judgment is affirmed.

ANDERSON, Acting P. J., RUDDY, J., and JAMES D. CLEMENS, Special Judge, concur.

On Motion for Rehearing

BRADY, Commissioner.

The motion for rehearing contains only one matter requiring comment. In this opinion we hold the provisions of § 71.860, RSMo 1959, Laws of Missouri, 1963, p. 126, Sec. A(1), inapplicable to this annexation. The plaintiffs contend this ruling is in direct conflict with that handed down on June 14 of this year in the case of City of Kirkwood, a Municipal Corporation v. Allen et al., 399 S.W.2d 30, by the Division No. 2 of the Supreme Court of this state. The Kirkwood case has been transferred to the Supreme Court en Banc where it is now pending with the result that there is presently no final ruling by that court upon this matter. However, we do not wish to

dispose of plaintiffs' motion for rehearing on that ground, as there are at least two other grounds upon which the inapplicability of Kirkwood, supra, can be shown and either of these would be sufficient. The first of these arises from the fact that in the instant case we are dealing with a constitutional charter city. Kirkwood, supra, did not involve such a city. The main issue before the court in Kirkwood was the constitutionality of the 1963 act, House Bill 21 of the 73rd General Assembly, which now appears as § 71.860 to § 71.920 of the Revised Statutes; that issue was never before this court. Regardless of the outcome of the Kirkwood case, it can have no application to that now before this court. In the event the court en Banc holds the 1963 act unconstitutional then obviously that act could have no application to the instant case and plaintiffs' contention is without merit. On the other hand, even if the Supreme Court en Banc upholds the divisional opinion as to that issue, still Kirkwood does not rule the instant case so as to require a change in our original decision. This for the reason that the specific question before the court in Kirkwood was the application of Sec. A(2), of the 1963 act, now § 71.870, RSMo 1959, V.A.M.S. The court in Kirkwood did not rule upon the applicability of § 71.860, supra, as that section was not there involved.

Another reason Kirkwood, supra, does not rule the instant case is illustrated by the care which we took in the opinion in the instant case to point out that the annexation here involved became effective on April 5, 1960 and that nothing thereafter remained to be done to consummate the annexation. We were cognizant that in Kirkwood, supra, the divisional opinion deals at length with the fact that other actions were required to consummate that annexation and that these would necessarily have to take place after the effective date of the 1963 act, October 13, 1963. It is largely on that basis that § 71.870, supra, was held applicable to the City of Kirkwood. In the instant case it is undisputed that this annexation was complete and final for over three years prior to the effective date of the 1963 act.

Since the date of the filing of the motion for rehearing, Division No. 1 of the Supreme Court of this state has handed down an opinion which squarely meets the issue of the applicability of § 71.860, supra, to constitutional charter cities which lie within the boundaries of St. Louis County. See St. Louis County, Missouri, and Lawrence K. Roos, Supervisor; and Theodore Glauert et al. v. City of Florissant, Mo., No. 51,204, December 14, 1965. It was therein held that the provisions of § 71.860, supra, were applicable to the City of Florissant, a constitutional charter city. Motions for rehearing or for transfer of that divisional opinion are still pending. However, again it should be noted that the annexation involved in the Florissant case had to be consummated after the effective date of § 71.860, supra, 1963 amendment. The election calling for the amendment to Florissant's charter and providing for the annexation was held on January 14, 1964. There is nothing in Florissant, supra, to indicate the 1963 act is applicable to an annexation completed in April of 1960.

The motion for rehearing must be overruled. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of this court. The motion for rehearing is overruled.

ANDERSON, Acting P. J., RUDDY, J., and JAMES D. CLEMENS, Special Judge, concur.